IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN KUSLITS,

               Plaintiff,

      v.

KAREN KLOTH, PAULA STOUDT
and REED RICHARDSON,

             Defendants.[1]

OPINION and ORDER

15-cv-413-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner John Kuslits brought this lawsuit against a correctional officer, a unit supervisor and the warden at Stanley Correctional Institution, claiming that they disciplined him in retaliation for his exercising his right to free speech, in violation of the First Amendment to the U.S. Constitution. The case stems from an interaction that took place on December 3, 2014 between plaintiff and an officer, in the presence of several other inmates. That incident was the subject of a subsequent disciplinary proceeding in which plaintiff was found guilty of two minor offenses and punished with a reprimand. On August 20, 2015, I granted plaintiff leave to proceed on his claims that defendants violated his First Amendment rights by disciplining him for speaking up about the rights of inmate kitchen workers to use microwaves during their dinner break. Dkt. #9. I dismissed all other claims.

---

[1] This is the current case caption, revised only to include the full name of each defendant.

Defendants have filed a motion for summary judgment, which I am granting because the undisputed facts show as a matter of law that plaintiff's speech was not protected by the Constitution, and also that plaintiff suffered no injury likely to deter protected First Amendment activity in the future.

From the parties' proposed findings of fact and the record, I find that the following facts are not subject to genuine dispute.

UNDISPUTED FACTS

Plaintiff John Kuslits is an inmate of the Wisconsin Department of Corrections at Stanley Correctional Institution.  He works in the prison kitchen, where he serves meals to other inmates.  In the early evening of December 3, 2014, after serving the dinner meal, plaintiff was eating with five other fellow inmates and kitchen workers in the housing unit 1A day room.  The day room is a common area that inmates use for socializing; it includes a dining area and one or two microwaves.  That evening, defendant officer Karen Kloth walked into the housing unit 1A day room area and saw one of the other five inmates (Michael Kazel) trying to heat up his food tray in the microwave.  Defendant Kloth informed Kazel that the microwaves were closed and were not to be used at that time. Plaintiff, who was with the other inmates nearby, expressed his disagreement.  Plaintiff told Defendant Kloth that the microwaves were "open to workers, they are open to all, just [be]cause you're here, they are not open."  Dfts.' PFOF, dkt. #44, ¶¶ 13-14; Plt.'s PFOF, dkt. #45, ¶ 18. (The parties dispute a number of facts, such as whether inmates were in fact

allowed to use the day room microwaves at that time.  They also dispute what additional statements plaintiff made to defendant Kloth, whether plaintiff was speaking loudly or sarcastically and whether he was behaving disruptively.)  Each of the other five inmates present, including Kazel, witnessed the conversation between plaintiff and defendant Kloth, and each heard them disagree about enforcement of the microwave policy, though the inmates' recollections differ as to the exact words that were exchanged.  Defendant Kloth heard someone tell her, "You don't belong here, you need to go!"  (The parties dispute whether plaintiff made this statement, or whether someone else did.)  Several of the other inmates became upset, and one or two other officers came over to calm them down.  Dfts.' PFOF, dkt. #45, ¶¶ 14-16; Plt.'s PFOF, dkt. #44, ¶¶ 7-24.

Following this incident, plaintiff was issued a conduct report alleging inadequate work performance and disruptive conduct, in violation of Wis. Admin. Code §§ DOC 303.63 and DOC 303.33.  Those administrative regulations apply to "[a]ny inmate whose work fails to meet the standards set for performance on a work assignment . . . or an inmate who fails to follow work or school rules or safety standards," and against "[a]ny inmate who engages in, causes or provokes disruptive conduct, or whose actions disrupt the orderly operation of the institution . . . includ[ing] physically resisting an employee, horseplay, arguing, any behavior which is loud, offensive or vulgar, or passive behavior which disrupts the orderly operation of the institution."  Captain Lundmark reviewed this conduct report and allowed it proceed through the prison disciplinary system as a "minor offense."  Dfts.' PFOF, dkt. #44, ¶¶ 15-18.

On December 8, 2014, a minor offense hearing was held before a single hearing officer, defendant Paula Stoudt, who was a Corrections Unit Supervisor at the Stanley facility.  In accordance with her duties under the applicable regulations (DOC 303.77), defendant Stoudt read the conduct report aloud to plaintiff, including defendant Kloth's allegation that he said: "Microwaves are open to workers, they are open to all, just cause you're here, they are not open; you don't belong here, you need to go!"  Plaintiff was given an opportunity to respond, and he gave the following statement:

> I said basically that except for that little statement that she included in. Others heard what I said I don't remember exactly what I said, but I did not say that she has to go and that she does not belong here.  Everybody was yelling at the same time, but she singled me out and directed her comments to me.  That's when I left and picked up my tray and walked out.  She first said that she was going to give me a warning and then I received a conduct report.

Richardson Decl., dkt. # 30-1, at 4.  Defendant Stoudt concluded that plaintiff's statement supported the body of the conduct report, and the facts supported a finding of guilt for the minor offenses of inadequate work performance and disruptive conduct.  At that point, according to the relevant DOC regulations, plaintiff could have been assessed one or more of several minor penalties, including reprimand, loss of certain privileges, restitution, room or cell confinement or additional duties or assignments without pay.  Defendant Stoudt decided to give plaintiff a disposition of "reprimand only," which was an oral statement delivered to the inmate addressing his past and future behavior and documented on the inmate's record.  Plaintiff did not lose his job working in the kitchen.  Dfts.' PFOF, dkt. #44, ¶¶ 32-33.

4

Plaintiff appealed the hearing officer's (defendant Stoudt's) decision on December 13, 2014. The decision was reviewed and affirmed by Deputy Warden Canziani on December 22, 2014.

Plaintiff filed an inmate grievance on or around January 2, 2015, alleging procedural errors in the handling of his conduct report and disciplinary proceeding. An institution complaint examiner reviewed this grievance and recommended dismissing it on February 2, 2015. On February 9, 2015, defendant and prison warden Reed Richardson reviewed the examiner's recommendation and dismissed plaintiff's grievance. This was defendant Richardson's first and only direct involvement in any aspect of plaintiff's grievance, disciplinary proceeding or the underlying incident. Plaintiff appealed this dismissal on or around February 16, 2015. On March 16, 2015, the corrections complaint examiner recommended dismissal of the appeal after reviewing the record and finding that it did not support plaintiff's assertions about procedural errors and fundamental unfairness in the disciplinary process. Finally, on April 1, 2015, the Office of the Secretary's designee agreed with that recommendation and dismissed the appeal.


OPINION

To prevail on his claim of First Amendment retaliation, plaintiff must prove that (1) his speech or activity in question was protected by the First Amendment; (2) he suffered a deprivation or injury that likely would deter First Amendment activity in the future; and (3) there was a causal connection between the two. Watkins v. Kasper, 599 F.3d 791, 794 (7th

Cir. 2010); <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009). To defeat defendants'
motion for summary judgment, plaintiff must present enough evidence to allow a reasonable
jury to find in his favor on each of these three elements.

Plaintiff's claim fails as a matter of law because his speech was not protected by the
First Amendment. Plaintiff asserts that his "speech is protected under the First Amendment,
by the simple fact that it was not loud, or vulgar, or offensive." Plt.'s Opp. Br., dkt. #33, at
4, but that is not the applicable legal standard. Rather, prison officials may regulate inmates'
speech activity, consistent with the First Amendment, if the restrictions are "reasonably
related to legitimate penological interests." <u>Bridges</u>, 557 F.3d at 551; <u>Turner v. Safley</u>, 482
U.S. 78, 89 (1987). In making this determination, I consider "whether there is a connection
between the regulation and a valid and neutral government interest; whether there are
alternative means of exercising the constitutional right; and the impact that accommodation
of the asserted right will have on guards, inmates, and the allocation of prison resources."
<u>Bridges</u>, 557 F.3d at 551 (citing <u>Turner</u>, 482 U.S. at 89-89).

Speech that has a "negative impact" on a legitimate penological interest, such as
prison discipline, may be validly restricted. <u>Watkins</u>, 599 F.3d at 797. In particular, inmate
speech that is insubordinate, disrespectful or undermining of prison officials' authority is not
protected by the First Amendment, especially if it is done in front of other inmates. <u>Id.</u> <u>See</u>
<u>also</u> <u>Kervin v. Barnes</u>, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to
guards, like other speech that violates prison discipline, is not constitutionally protected.")
(citing <u>Ustrak v. Fairman</u>, 781 F.2d 573, 580 (7th Cir. 1986); <u>Watkins</u>, 599 F.3d at 797;

Bridges, 557 F.3d at 551; Gee v. Pacheco, 627 F.3d 1178, 1187-88, 1191 (10th Cir. 2010)).

In Watkins, the most relevant circuit precedent, the plaintiff worked as a clerk in the prison law library.  In a meeting with other inmate clerks where prison officials announced a new restriction on inmates' giving legal assistance to other prisoners, Watkins objected and complained about the new policy.  The Court of Appeals for the Seventh Circuit held that Watkins's speech was not protected by the First Amendment because "[b]y openly challenging [the library official's] directives in front of other prisoner law clerks, Watkins impeded her authority and her ability to implement library policy."  Watkins, 599 F.3d at 797.  While Watkins had a general right to criticize prison policies "in a manner consistent with his status as a prisoner," he did not have a protected First Amendment right to do so in public, in the presence of other inmates, in the way that he did.  Id. ("Because Watkins's public challenge to Kasper's directives was inconsistent with her legitimate interests in discipline and library administration, this speech is unprotected as a matter of law under Turner.").

Although the parties dispute some of plaintiff's words and also whether he spoke them loudly or sarcastically to defendant Kloth, it is undisputed that, after Kloth told another prisoner not to use the microwave, plaintiff spoke  up and contradicted defendant Kloth in front of the other inmates.  Plaintiff's own evidence confirms this.  The other inmates' affidavits all make clear that plaintiff initiated and held a public disagreement with defendant Kloth in which they argued over inmates' microwave use.  Regardless of the parties' dispute over the particular language or tone used, when confronted with the

allegations against him at his minor offense hearing, plaintiff admitted that he "said basically that," and that between the inmates and the officers present, "[e]veryone was yelling at the same time." It is also undisputed that several of the other inmates became upset and were calmed down by other officers. Dfts.' PFOF, dkt. #44, ¶¶ 17, 25-31; Richardson Decl., dkt. # 30-1, at 4.

These undisputed material facts show that plaintiff's speech was similar in critical respects to the speech at issue in <u>Watkins</u>. In both cases the speech was a response and opposition to a prison official's words and actions, in public, in the presence of other inmates. The record here demonstrates that "[b]y openly challenging [defendant Kloth's] directives in front of other prisoner[s]," plaintiff "impeded her authority and her ability to implement" prison policy with respect to use of the day room microwaves. <u>Watkins</u>, 599 F.3d at 797. Plaintiff has submitted no evidence that he was barred as a general matter from disagreeing with or complaining about prison policies. There were alternative means available for him to express his views: he could have spoken to defendant Kloth (or another official) in private, he could have "taken the less disruptive approach of filing a written complaint" or otherwise spoken "in a manner consistent with his status as a prisoner." <u>Id.</u> But instead, plaintiff chose to confront and disagree with defendant Kloth in front of other inmates and kitchen workers, which caused something of a scene. One can readily see why this manner of opposition speech, as distinguished from a written or private oral complaint, may have a greater tendency to cause disturbances. Thus, I find that the restriction on plaintiff's speech in these circumstances, through enforcement of prison regulations

prohibiting arguing and disruptive behavior,  was reasonably related to the legitimate penological interest of inmate discipline.  Id.   As a result, plaintiff's speech was not protected by the First Amendment.

Plaintiff has also failed to establish the second element of his claim: that he suffered a deprivation or injury that likely would deter First Amendment activity in the future. Plaintiff acknowledges that the only sanction imposed upon him for his minor offenses was an oral reprimand, even though defendants could have imposed harsher penalties.  He argues that "a reprimand or any punishment is meant to deter inmates from speaking against staff," but cites nothing to support this conclusory proposition.  Plaintiff also contends that he "could not have lost his job for his minor infraction," though it is not clear how this helps his argument because he did *not* in fact lose his job.  Plt.'s PFOF, dkt. #45, ¶¶ 33-35; Dfts.' PFOF, dkt. #44, ¶¶ 30-36; Plt.'s Opp. Br., dkt. #33, at 6.

I am not persuaded that a mere reprimand alone, without further evidence of actual harm, "would 'deter a person of ordinary firmness' from exercising First Amendment activity in the future."  Bridges, 557 F.3d, at 552 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).  See, e.g., Gallo v. Pitch-Stokes, No. 13-CV-1476, 2016 WL 912161, at *7 (C.D. Ill. Mar. 7, 2016) ("[V]erbal reprimands, which carry no disciplinary consequences, are not sufficiently adverse to deter speech.") (citing Bridges, 557 F.3d, at 555); Pegues v. Orrill, No. 13-cv-3200, 2015 WL 1058806, at *3 (C.D. Ill. Mar. 5, 2015) (finding that a verbal reprimand imposed after a disciplinary action "is not adverse enough to support a retaliation claim").

9

Because plaintiff has not shown that his speech to defendant Kloth was constitutionally protected, or that he suffered any injury that likely would deter First Amendment activity in the future, his retaliation claims against all three defendants must be dismissed. Consequently, I need not address plaintiff's more attenuated theories of liability with respect to defendants Stoudt and Richardson.

ORDER

IT IS ORDERED that

1.      Defendants Karen Kloth, Paula Stoudt and Reed Richardson's motion for summary judgment, dkt. #26, is GRANTED.

2.      The clerk of court is directed to enter judgment in favor of defendants and to close this case.

Entered this 16th day of November, 2016.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

10